THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| KW EXCAVATION, INC., | ) | Case No. 1:05CV00070 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM OPINION AND ORDER ADDRESSING ESI's RENEWED MOTION IN LIMINE AND FOR SUMMARY JUDGMENT |
| ENGINEERED STRUCTURES, INC., ET AL., | ) ) | |
| Defendants. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

This case involves the construction of a Home Depot in Layton, Utah for which Engineered Structures, Inc. ("ESI") was the general contractor and KW Excavation, Inc.("KW") was a subcontractor with responsibility for providing excavation work and structural fill for site utilities. Pending before the Court is the Renewed Motion in Limine and for Summary Judgment (Doc. # 103) filed by ESI.[1] The essence of the issue presented by ESI's

---

[1] On October 31, 2006, ESI filed a Motion in Limine asserting among other things that KW does not have a valid equitable claim for damages against it due to the existence of a valid and enforceable contract which covers the subject matter of KW's Claims. On November 20, 2006, the day before the Pre-trial Conference, KW, relying on *Davies v. Olsen*, 746 P.2d 264, 268 (Utah App. 1987) and *Richards Contracting Co. V. Fullmer Bros.*, 417 P.2d 755 (Utah 1966), filed its opposition to the Motion urging that its claim for equitable relief is not precluded by the existence of an enforceable subcontract with ESI. Thereafter, the Court determined that it would allow testimony on

1

Motion is whether KW has a valid equitable claim against ESI for damages allegedly arising from KW's importation of fill material, despite the existence of a valid and enforceable written contract. For the reasons that follow the Court concludes that there is no viable basis for KW's claim for unjust enrichment/quantum meruit and ESI's motion in that regard is granted.

In an earlier bench decision following oral argument, the Court granted ESI's Motion for Summary Judgment on KW's first cause of action for breach of contract. However, KW's Amended Complaint also asserts a claim for unjust enrichment/quantum meruit.[2] KW alleges that after it began work it was required to

---

the issue but reserved the right to conclude that the claim could not be brought because it was barred by the existence of an enforceable contract. Following the Pre-trial Conference, ESI filed a Reply Brief and Renewed its Motions in Limine and for Summary Judgment. On November 28, 2006, after ESI made an oral record of its response to KW's Opposition , the Court, after consultation with counsel, continued the trial and allowed the parties to file supplemental briefing.

[2] Utah courts recognize that the legal principle of quantum meruit has two branches. Unjust enrichment or quasi-contract which requires the following elements: "(1)the defendant received a benefit; (2)an appreciation or knowledge by the defendant of the benefit; (3)under circumstances that would make it unjust for the defendant to retain the benefit without paying for it." *Davies v. Olson*, 746 P.2d 264,268-269 (Utah App.1987). A contract implied in fact is the second branch of quantum meruit and requires the following elements: "(1)the defendant requested the plaintiff to perform work; (2)the plaintiff expected the defendant to compensate him or her for those services; and(3)the defendant knew or should have known that the plaintiff expected

import structural fill for which ESI refuses payment. It claims entitlement to equitable relief notwithstanding the existence of an enforceable contract. Specifically, KW now contends that it "is not claiming relief for work performed under the Subcontract, but extra work, outside the parties' agreement, and performed at ESI's request or acquiescence." Mem. Opp'n Renewed Mot. Summ. J., p.4. ESI, contends that KW does not have a viable equitable claim for damages due to the existence of a valid and enforceable contract which covers the subject matter of KW's claim.

## II.  FACTS

The relevant facts are these.[3] In July of 2004, ESI and Home Depot entered into a Prime Contract for the construction of a store in Layton, Utah (the "Project"). The Project specifications included a Geotechnical Report prepared by Kleinfelder Inc. for Home Depot (the "Kleinfelder Report") relating to soil conditions at the building site. Specifically, the Kleinfelder Report provided at § 6.2.4 (emphasis added):

---

compensation." *Id.* Based on Plaintiff's pleading, it appears that Plaintiff's are seeking relief based on unjust enrichment or quasi-contract. *See* Am. Compl. ¶¶ 43-47.

[3] Many of the facts and allegations relevant to this Renewed Motion are not set forth in detail in the present pleadings but are deemed by the Court to be incorporated by implication and by reference to pleadings previously submitted. The Court takes notice of those facts and allegations so raised.

> **Structural fill may consist of approved on-site granular soils, or approved import material.** ... We recommend the **on-site clay soils** not be used for structural fill within the building area given the fact they are typically above optimum moisture content .... These soils **may be used**, however, **beneath pavement areas provided they are properly moisture conditioned and compacted as recommended below.**" [4]

KW was the successful bidder for excavation and structural fill work and entered into a Subcontract with ESI. Under the terms of the Subcontract, all excavation and backfill work including labor and materials was to be completed by KW in accordance with the plans and specifications of the Project including the Kleinfelder Report.

In August of 2004, KW began excavation and backfill work on the Project. It subsequently experienced compaction problems with the on-site clay soils it was using for structural fill,

---

[4]Section 7.1 LIMITATIONS of the Kleinfelder Report further provides: "If any conditions are encountered at this site that are different from those described in this report, our firm should be immediately notified so that we may make any necessary revisions to recommendations contained in this report." That section further states that the Kleinfelder Report is to be used only by the Client (Home Depot) and that "[b]ased on the intended use of the report, Kleinfelder may require that additional work be performed and that an updated report be issued." KW has previously argued that the "may require that additional work" language provided that Kleinfelder, apparently as ESI's agent, could require additional work from KW. Kleinfelder, by affidavit, clarifies that the additional work that may have been required was work by it, and not by KW as KW asserts.

apparently because of moisture content. KW also alleges that problems with compaction were compounded when some of the utility lines had to be lowered beyond specifications because of Layton City requirements. ESI disputes this claim, but contends, nevertheless, that it was an issue within the contemplation of the parties contract.[5]

In early September of 2004, to expedite the backfilling process, KW began lessening the amount of conditioning it was performing with on-site clay soils and began importing non-native granular materials for mixing with the structural fill.

Apparently concerned about whether it would get paid for the imported fill, estimated at the time by KW not to exceed $40,000., KW's Kariger inquired of ESI's Joseph Jackson if he thought KW would get paid for importing backfill. Jackson Dep. P.98. Jackson responded:

> I believe the documents speak for themselves, and your're not due any additional money per the contract. But if we get through this project and you complete your schedule, your work in such a fashion that we don't incur winter condition costs to get this project

---

[5]Both the Layton City Engineer and the Associate Engineer deny ever discussing design standards with anyone from KW. Decker Aff.; Barry Aff. And it is undisputed that KW never received written instruction from ESI, Layton City, or Galloway Romero, Home Depot's engineers, regarding the purported change. Kariger Dep. pp.147-148.

5

>    paid by the end. ... I will help you with that.

Id.  In his affidavit, Jackson further states:

>    I told [KW's] Mr. Kariger that if ESI did not incur additional expense related to the paving work due to KW's failure to meet the Project's schedule. ESI would try and assist with these costs. ... In fact, ESI did incur additional expenses primarily related to the paving work being delayed as a result of KW's failure to meet the Project's schedule.

Jackson Aff. ¶¶ 23-24.

On September 22, 2004, at the request of KW, an on-site meeting was held with Scott Davis of Kleinfelder. Following the meeting, Davis prepared a letter dated September 22, 2004 to ESI (the "Kleinfelder Letter") to address KW's compaction problems. The Kleinfelder Letter provides in part as follows:

>    At the request of Mr. Tim Freer, **this letter presents our observations and recommendations** regarding backfill of utility trenches at the Home Depot site in Layton Utah....
>
>    I visited the site on September 22 .... Based on my observations and discussions with our inspector and Mr. Whitaker, **I present the following observations and recommendations.**
>    ...
>
>    Where groundwater or soft, unstable soils are encountered in trench bottoms, **we recommend** the trench be backfilled in lifts, with clean angular gravel (unless prohibited ...) and worked into the bottoms and sidewalls until a firm bearing surface is achieved. At this point the gravel should be overlain with a geotextile separator fabric ... and the remainder of the trench backfilled with structural fill.
>
>    The previous excavated soils **may be** re-used as

> structural fill, **if desired.** However, careful moisture condition and placement in thin lifts will be necessary to achieve compaction requirements. Given the difficulty experienced to date, **consideration could be given** to importing granular material similar to the building pad fill ... particularly in light of the increased potential for wet weather as winter approaches.
>
> The granular material (Lakeview pit) currently being imported **may be** used as well. ...
>
> ...

(emphasis added).

### III.   SUMMARY JUDGEMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[6]  *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). This burden has two distinct components:  an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party.  *See* 10A C.

---

[6] Whether a fact is material is determined by looking to relevant substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202.

## IV. DISCUSSION

### A. Quantum Meruit/Unjust Enrichment

Citing various authorities, ESI contends that it is entitled to Summary Judgement on KW's quantum meruit/unjust enrichment claim against it because where, as here, the parties have an enforceable contract that governs their relationship, the equitable doctrine of unjust enrichment is not available.[7]

---

[7] *See, e.g., American Towers Owners Ass'n, Inc. v. CCI Mechanical, Inc.*, 930 P.2d 1182 (Utah 1996)(if legal remedy is available, such as breach of express contract, law will not imply equitable remedy of unjust enrichment); *Davis v. Olson*, 746 P.2d 264 (Utah App. 1987)(recovery under quantum meruit presupposes that no enforceable written or oral contract exists); *Mann v. American Western Life Ins. Co.*, 586 P.2d 461 (Utah 1978)(recovery in quasi contract is not available where there is an express

8

KW counters that the existence of a written contract does not preclude recovery based on a theory of unjust enrichment/quantum meruit and that "the law is plain that equitable relief is not precluded where a subcontractor performs extra work with the express or implied promise from the other party that such work will be paid for." Mem. Opp'n Renewed Mot. Summ. J., p 2.[8]

There are circumstances where unjust enrichment is appropriate notwithstanding the existence of a contract. So concluded the Utah Supreme Court in *Richards Contracting Co.*, 417 P.2d 755 (Utah 1966), wherein it stated:

> It is recognized that such a [sub]contract is controlling,-execpt where the contractor verbally encourages the subcontractor to do the extra work with

---

contract covering the subject matter of litigation); *Wood v. Utah Farm Bureau Ins. Co.*, 19 P.3d 392 (Utah App. 2001)(recovery under an unjust enrichment theory is available only when no enforceable written or oral contract exists). *Concrete Products Co., a Div. of Gibbons & Reed v. Salt Lake County*, 734 P.2d 910. 911 (Utah 1987)("[u]njust enrichment is a doctrine under which the law will imply a promise to pay for goods or services when there is neither an actual nor an implied contract between the parties").

[8]. *See, e.g., Bailey-Allen Co. v. Kurzet*, 876 P.2d 421, 425 (Utah App. 1994)(contractor who failed to substantially perform contract could not recover under contract, but could recover in quantum meruit); *Davies v. Olsen*, 746 P.2d 264, 268 (Utah App. 1987)("[q]uantum meruit is an action initiated by a plaintiff to recover payment for labor performed in a variety of circumstances in which that plaintiff, for some reason, would not be able to sue on an express contract"); *Richards Contracting Co. v. Fullmer Bros.*, 417 P.2d 755 (Utah 1966)(discussed herein).

> the express or implied promise that it would be paid for,-as appears to be the case here. ...
>
> A contract with specific terms cannot remain hypertechnically specific after the parties decide on extras, which was the case here, in which event another contract in quasi contract arises based on a so-called quantum meruit theory, which, if sound, certainly has application here, and we so hold.

*Id.* *Corbin on Contracts* is consistent with the foregoing, but elaborates.

> The statement is frequently found that where the parties have made an express contract the law will not imply one. This is a misleading statement, even though some truth is concealed within it. It is more accurate ... to say that where the parties have made an express contract, the court should not find a different one by implication concerning the same subject matter if the evidence does not justify an inference that they intended to make one. ... [T]he fact that an express contract has been made does not prevent the parties from making another one tacitly, concerning the same subject matter or a different one.

3 Arthur Linton Corbin, *Corbin on Contracts* § 564, at 292-93 (1960). Corbin notes that such modifications frequently occur in the construction setting:

> It is very common in building transactions for the parties to execute a detailed and formal contract and yet to vary the plans and specifications as the work proceeds. ... If such extra work is requested or authorized by the owner or his engineer, payment must be made for it even though no promise to pay was made in express words.

*Id.* at 296.

The essence of KW's claim for equitable relief is that

because of unanticipated soil conditions and because of the alleged Layton City requirement to lower the depth of certain utility lines, which KW alleges was different than the bid specifications, it had to import fill for utility trench backfill which constitutes additional/extra work. And that work was requested/authorized by ESI or its agent Kleinfelder as evidenced by the Kleinfelder Letter.[9]

Key to resolution of ESI's Renewed Motion for Summary Judgment, is whether, as KW now asserts, its use of imported fill was work above and beyond that contemplated in the original Subcontract such that a new contract was created by which, KW in equity, is entitled to be compensated.

The undisputed material facts do not justify the conclusion, by implication or otherwise, that ESI and KW by their conduct intended to make a new or additional contract on the subject of importing fill material. Project site soil conditions were not

---

[9] See Mem. Opp'n Renewed Mot. Summ. J., pp. 5,9 ("KW adheres to its longstanding position that the importation of structural fill constitutes additional or extra work, as suggested by the language of the Geotechnical Report and revealed by Kleinfelder's subsequent memorandum"; "Following the receipt of changed construction plans and the resulting lowering of a water line utility, KW was instructed by ESI and its agent Kleinfelder to import structural fill .... This instruction was communicated pursuant to a modified report issued from Kleinfelder and the on-site instructions from ESI and its agents.").

11

unanticipated as KW urges. The Kleinfelder Report, which KW received as a bidding document, specifically discussed the soil conditions, including moisture content, and put KW on notice of actual soil conditions at the Project site prior to bidding. The Kleinfelder Report recommended that structural fill could consist of on-site granular soils, properly conditioned on-site clay soils, or approved imported fill. KW admits that it bid the project on the assumption that it could use only on-site material.[10] Nevertheless, the use of imported fill was contemplated by the parties and the Subcontract required KW to furnish all labor and material, including fill material, necessary to complete the site utilities in accordance with plans and specifications.

Similarly, the Court is not persuaded by KW's position that the alleged request by Layton City officials to lower certain utility trenches beyond contract specifications compounded compaction problems requiring KW to import fill material and, thus, constituted extra work not contemplated by the Subcontract. Although the issue of whether Layton City made such a request is

---

[10]. In a letter dated October 25, 2004 from KW's Kelly Kariger to ESI's Joe Jackson, KW admits that "[u]sing the information given in the Geotechnical [Kleinfelder] Report dated May 25, 2004, on-site observations, and previous knowledge of the area/site, KW based the bid for the site utilities using the native material for backfilling."

disputed, such an occurrence was anticipated in the contract documents. The Waterline Construction Notes from the Project Specifications provide: "IF A CONFLICT ARISES BETWEEN THESE NOTES AND DETAILS AND CITY STANDARDS, THE CITY STANDARDS SHALL SUPERSEDE THESE NOTES AND DETAILS." Under the Subcontract KW had a duty to notify ESI in writing of such plan changes.[11] KW failed to give ESI any such written notice. And, as discussed, prior to bidding KW was on notice of the very soil conditions which it alleges compounded compaction problems when it excavated the trenches deeper. Importation of fill material was contemplated by the parties and KW agreed to furnish all labor and material, including importation of fill, necessary to complete its work. It is also noteworthy that the parties agreed that any work not previously contracted for, had to be authorized in writing.[12] KW never obtained any written directive providing that it should lower the depth of utility trenches.

The Court also rejects KW's position that the Kleinfelder Letter modified prior contract specifications. Contrary to KW's assertion, that the Kleinfelder Letter directed it to do work in

---

[11]Subcontract ¶ 24 provides that the subcontractor (KW) should notify ESI in writing of any omissions or inconsistencies in the Contract Documents within 3 days, the failure of which renders any claim of the subcontractor null and void.

[12]*See* Subcontract ¶ 5.

addition to that specified in the Kleinfleder Report and for which it contracted, the Court concludes that the Kleinfelder Letter, on its face, is nothing more than observations and recommendations which KW was free to follow or not. As ESI has previously noted, the Kleinfelder Letter provides three "recommendations" for achieving required moisture content and compaction. The first two recommendations were essentially set forth in the original Kleinfelder Report. The third recommendation simply identified how to more effectively use the specific fill material that KW was already importing prior to the date of the Letter.

Likewise, any reliance by KW on the statement by ESI's Joe Jackson that ESI would try to assist KW with additional costs falls short of creating a new or additional contract. It is undisputed that Jackson stated that the contract documents speak for themselves and that no additional money was due per the contract. The Subcontract at ¶ 5 clearly provides that additional work was to be performed only at the written direction of ESI. At best, Jackson's statement possibly could be construed as an offer contingent on a condition subsequent which was not met.

14

Neither does the Court find, for purposes of KW's equity claim, that there is any viable evidence that Kleinfelder was acting as ESI's agent, apparent or otherwise, when it sent the Kleinfelder Letter to ESI.  As noted, the Kleinfelder Letter was addressed and sent to ESI, not KW.   Both ESI and Kleinfelder deny the existence of any such agency, implied or otherwise.  Jackson Aff., Davis Aff.  The Kleinfelder Report clearly states that Home Depot is Kleinfelder's client.  The Subcontract at ¶ 5 provides that any change order must be signed by the ESI's Project Manager, a person known to KW.

Finally, as previously held by the Court in dismissing KW's breach of contract claim, KW's execution of the Subcontractor's Payment Claim Release and Lien Waivers contradicts any expectation of further payment.  Those documents reflect that any debt owing to KW related to the Project has been paid.

In sum, the Court concludes that there is no viable evidence from which a reasonable fact-finder could conclude that the parties entered into a new contract in addition to the Subcontract agreed upon, or that ESI or its agent requested or authorized additional/extra work as KW  alleges.

## V. CONCLUSION

For the reasons stated, ESI's Renewed Motion for Summary Judgment as to KW's third cause of action for unjust enrichment/quantum meruit is granted. KW's claim for unjust enrichment/quantum meruit, therefore, is dismissed. ESI's Renewed Motion in Lemine requesting preclusion of evidence on that claim is moot and denied as such.

IT IS SO ORDERED.

DATED this _1st_ day of _February_, 2007.

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT